FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM H. DELAY,
            *Plaintiff-Appellant,*

v.

MEL GORDON, Chairman; PACIFIC
NORTHWEST RIVER BASINS
COMMISSION, an interstate
commission,
            *Defendants-Appellees,*

UNITED STATES OF AMERICA,
            *Real Party in Interest.*

No. 05-36108

D.C. No.
CV-80-00549-ALH

OPINION

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

Argued and Submitted
September 15, 2006—Portland, Oregon

Filed January 11, 2007

Before: Barry G. Silverman and Ronald M. Gould,
Circuit Judges, and John S. Rhoades,* District Judge.

Opinion by Judge Gould

---

*The Honorable John S. Rhoades, Sr., Senior United States District
Judge for the Southern District of California, sitting by designation.

## COUNSEL

J. William Bennett, Cannon Beach, Oregon, for plaintiff-appellant William H. Delay and Delay Beneficiaries.

Isaac J. Lidsky, Attorney, Appellate Staff, Office of the Attorney General, Washington, D.C., for defendants-appellees Mel Gordon, Chairman, and Pacific Northwest River Basins Commission, and for the United States.

## OPINION

GOULD, Circuit Judge:

The beneficiaries of Plaintiff-Appellant William Delay's estate[1] appeal an order from the district court denying modification under Federal Rule of Civil Procedure 60(b)(6) of a January 8, 1985 judgment on a breach of employment contract claim against the now-abolished Pacific Northwest River Basins Commission ("the Commission"). Appellants asserted that, under a change in the decisional law, the United States was liable for effecting an unconstitutional taking of Delay's cause of action when it abolished and de-funded the Commission in 1981, so that the judgment against the Commission should be modified to be a judgment against the United States for which the United States Judgment Fund was liable. As stated by the district court, "Pursuant to Rule 60(b)(6), plaintiff seeks an order modifying the District Court Judgment to make the United States liable on the Judgment at issue." The district court denied the Motion to Modify Judgment Pursuant to Rule 60(b)(6), the Delay beneficiaries have appealed, we have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

The Commission was established by Executive Order in 1967 by President Lyndon Johnson and charged with maintaining a joint plan for federal, state, interstate, local, and non-

---

[1] William Delay died in 1998. His wife, Marlene Delay, died in 2003. The Delay children are beneficiaries of William Delay's estate ("Delay beneficiaries" or "Appellants").

governmental development of water resources in the Columbia River basin.[2] The Commission received at least fifty percent of its funding from the federal government in addition to contributions by the participant states. According to his employment contract with the Commission, Delay was hired on March 11, 1969 as a hydrologist "for such a period of time as [his] services were necessary and satisfactory." On April 21, 1978, Mel Gordon, as newly appointed Chairman of the Commission, notified Delay that his assignments had been completed, and that his position would be terminated on June 8, 1978.

After the termination, on June 5, 1980, Delay brought a claim for breach of employment contract and violations of 42 U.S.C. § 1983 in the United States District Court for the District of Oregon under 28 U.S.C. § 1332.[3] The United States Attorney for the District of Oregon, which represented Commissioner Gordon, asserted that Delay's employment contract was with the United States and argued that the district court lacked jurisdiction under 28 U.S.C. § 1346(a)(2) ("the Tucker Act"),[4] requiring transfer to the United States Claims Court. On December 4, 1981, the Magistrate Judge agreed with the government's position and transferred the case under 28 U.S.C. § 1491(a)(1).[5] Before Delay's case was transferred,

---

[2]The Commission was comprised of a chairman and representatives from eight federal departments and two federal agencies, all appointed by the President; appointees from five participating Pacific Northwest states; one observer from Canada; and representatives from interested Native American tribes.

[3]The breach of contract claim alleged that Delay was not terminated in compliance with the Personnel Manual. The district court dismissed the section 1983 claims on summary judgment.

[4]"The district court shall not have jurisdiction of any civil action or claim against the United States founded upon an express or implied contract with the United States. . . ." 28 U.S.C. § 1346(a)(2).

[5]"The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded . . . upon an express or implied contract with the United States. . . ." 28 U.S.C.

however, President Ronald Reagan abolished the Commission by Executive Order, effective September 8, 1981.

Before the Claims Court, the United States reversed its position and argued that the claims court lacked jurisdiction because the Commission was not a federal entity and thus Delay had no contract with the United States. On September 28, 1983, the Claims Court held that in light of the statutory framework establishing the Commission, and "the legislative history illuminating that framework, it is crystal clear that the plaintiff's employment contract was not a 'contract with the United States,' within the meaning of section 1491." *See Delay v. United States*, No. 32-82C, slip op. at 7 (Cl. Ct. Sept. 28, 1983) (citing legislative history that "Commissions [were] . . . not 'to be Federal bodies' or 'Federal agencies' "). On April 9, 1984, the United States Court of Appeals for the Federal Circuit affirmed the lower court and remanded with instructions to transfer the case back to the United States District Court for the District of Oregon for further proceedings on the breach of contract claim.[6] *See Delay v. United States*, Appeal No. 84-606 (Fed. Cl. Apr. 9, 1984).

§ 1491(a)(1). At the time of transfer, the functions now handled by the Court of Federal Claims and the United States Court of Appeals for the Federal Circuit were in a single court, the United States Claims Court. Shortly after the transfer of Delay's case, pursuant to the Federal Courts Improvement Act of 1982, the United States Claims Court was replaced by and split into its descendant courts, with a trial division becoming the United States Claims Court, and an appellate division becoming the United States Court of Appeals for the Federal Circuit. The United States Claims Court in 1992 was later renamed the United States Court of Federal Claims.

[6]While the United States Attorney for the District of Oregon represented the Commission before the district court, an Assistant Attorney General and a Department of Interior lawyer argued before the Claims Court. The government's position then, as now, was that it mistakenly had argued before the district court that the case should be transferred.

On January 8, 1985, after a jury trial, the district court entered a judgment on Delay's breach of contract claim against the Commission in the amount of $140,430 plus post-judgment interests and costs. With the Commission formally abolished by this time, however, the only remaining funds associated with the Commission were $28,855.53 held in a suspense account at the Office of Management and Budget ("OMB"). Because the OMB would not release the funds absent an express waiver of claims on the remainder of the judgment, Delay refused to settle. In the intervening two decades, Delay pursued in vain various avenues to obtain payment on the judgment.[7]

In November 2004, the Delay beneficiaries filed a Motion to Modify Judgment Pursuant to Rule 60(b)(6) in the United States District Court for the District of Oregon to make the United States liable as the real party-in-interest. Thus the plaintiffs' motion urged that the judgment be modified to be a judgment against the United States, for which the United States was liable for the satisfaction thereof. The Delay beneficiaries asserted that given the combined authority in *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), and *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001),[8] the Commission could be

---

[7]First in 1990, Delay unsuccessfully attempted to obtain payment from the General Accounting Office, a request rejected under the Claims Court's holding that Delay's contract was not with the United States. Next, when Delay sought a writ of garnishment against the OMB in 1991, the United States District Court for the District of Columbia ruled that there was no waiver of sovereign immunity that would permit garnishment. Finally, Delay's family convinced a California Congressman to sponsor a private relief bill on February 27, 2001, but the bill failed to make it out of committee.

[8]In *Lebron v. National Railroad Passenger Corp.*, the Supreme Court held that Amtrak could be deemed a federal entity for purposes of the First Amendment regardless of its statutory designation as a "private" corporation. 513 U.S. 374, 383-84, 400 (1995). In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, the Supreme Court held that a nominally private interscholastic athletic association comprised primarily of public schools was a state actor for purposes of claims under 42 U.S.C. § 1983 due to a substantial entwinement with state regulatory functions. 531 U.S. 288, 302-03 (2001).

characterized for the first time as a federal entity. Under a new theory, plaintiffs argued that Delay was prevented from collecting on the judgment because the government had taken inconsistent positions regarding Tucker Act jurisdiction, which caused significant delay as the case was unnecessarily transferred to the Claims Court and then back to the district court in Oregon. In plaintiffs' view, the effect of the delay denied Delay the opportunity to obtain a judgment before the Commission had been wound up and de-funded. Plaintiffs alleged that the United States thereby effected an unconstitutional taking of Delay's property (*i.e.* his claim against the Commission), when, in September 1981, the United States abolished the Commission while Delay's breach of contract claim against the Commission was pending.

In assessing plaintiffs' Motion to Modify Judgment, the district court expressed sympathy with the idea that the government's inconsistent positions caused inordinate delay in the resolution of Delay's case (noting that "defendants caused excessive delays," that plaintiff's suit was filed in 1980 in the district court but not brought to trial until 1984, and that "[a]bsent defendants' delays, plaintiff's judgment likely could have been entered before the Commission was terminated on September 8, 1981"). The district court also commented that the effect of *Lebron-Brentwood Academy* could recast the Commission as "the United States for constitutional purposes." The district court also viewed favorably plaintiffs' reliance on *United States v. Washington*, 394 F.3d 1152 (9th Cir. 2005) (the *Samish* case),[9] to support the argument that the

---

[9]In the *Samish* case, we considered under Rule 60(b)(6) a judgment that denied the Samish intervention in the adjudication of fishing rights under various treaties on the ground that they had not maintained an organized tribal structure. *See United States v. Washington*, 394 F.3d 1152, 1161 (9th Cir. 2005) (holding that the Samish's lack of recognition as a tribe was a circumstance beyond its control, and that the lengthy process to secure tribal recognition by the Bureau of Indian Affairs amounted to extraordinary circumstances that warranted setting aside the judgment that denied them fishing rights based on their perceived non-tribe status).

excessive delay amounted to extraordinary circumstances under Rule 60(b)(6) in impeding Delay's prosecution of his case to judgment.[10] The district court concluded that the *Lebron* and *Brentwood Academy* holdings could not be expanded to encompass contractual claims against the United States under these circumstances in light of the 1983 decision by the Court of Claims that no contract claim existed against the United States. Moreover, the district court denied relief on the request for amendment of judgment to reflect a takings claim because it was "unconvinced that the circumstances presented can be fairly reinterpreted to describe 'a constitutional taking' in any reasonable sense of the meaning of that term." This timely appeal followed.

## II

We review the district court's denial of a Rule 60(b)(6) motion for an abuse of discretion. *See Washington*, 394 F.3d at 1157. The judgment below must be affirmed unless (1) we have "a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors," (2) the district court applied the wrong law, or (3) the district court rested its decision on clearly erroneous findings of fact." *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001) (internal citations omitted).

## III

The Delay beneficiaries argue that the district court abused its discretion when it did not modify the judgment to become a judgment against the United States, in light of *Lebron-*

---

[10]The district court found that the Delay beneficiaries had met the Rule 60(b)(6) requirement that the motion be filed within a reasonable time "in that it was based on case law that emerged in 1996, 2001, and 2005," and because Delay had consistently pursued other remedies during the relevant period.

*Brentwood Academy*, where the district court recognized that the delay in litigation caused by the government was an extraordinary circumstance that impeded Delay from obtaining and collecting on a judgment before the Commission was abolished and de-funded.

**[1]** Rule 60 of the Federal Rules of Civil Procedure provides a means of altering a judgment in limited circumstances. Rule 60(b) provides:

> **(b)  Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken . . . .

Fed. R. Civ. P. 60(b).

A leading treatise, discussing the purposes of Rule 60, explains that "Rule 60 regulates the procedures by which a party may obtain relief from a final judgment. . . . The rule

attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2851 (2d ed. 1995).

**[2]** The Rule 60(b)(6) "catch-all" provision, on which appellants rely, applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 n.8 (9th Cir. 2002). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). A party seeking to re-open a case under Rule 60(b)(6) "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Cmty Dental*, 282 F.3d at 1168.

**[3]** As another leading treatise explains, "Rule 60(b) is available only to set aside a prior judgment or order; courts may not use Rule 60(b) to grant affirmative relief in addition to the relief contained in the prior order or judgment."[11] 12 *Moore's Federal Practice* § 60.25 (Matthew Bender 3d 2004). An Eleventh Circuit case, *United States v. $119,980*, 680 F.2d 106 (11th Cir. 1982), illustrates this limitation on the

---

[11] We have recognized an exception to this rule where "[r]epudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance" that may justify vacating the court's prior dismissal order under Rule 60(b) in order to return the parties to the status quo ante, rather than leaving the frustrated party to sue for breach of the settlement agreement. *See Keeling v. Sheet Metal Workers Intl. Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) (adopting minority position as set forth in *United States v. Baus*, 834 F.2d 1114, 1124 (1st Cir. 1987), that Rule 60(b) permits in some cases re-opening settled litigation to enforce settlement agreements).

district court's powers of equity. In *United States v. $119,980*, the district court had approved a settlement in which the United States Customs Services and the claimants would split a res of $119,980. 680 F.2d at 107. After the final order was entered, the district court learned that the Internal Revenue Service ("IRS") had issued notices of levy against the defendant currency. *Id.* In response to the motion of the IRS, the district court modified the order under Rule 60(b)(6), directing that half of the money be given to the IRS rather than to claimants. *Id.* The Eleventh Circuit held that the district court did not have authority under Rule 60(b) to require that the money be given to the IRS. *Id.* at 108 (ruling that district court only had the authority to "set aside its order approving and implementing the settlement"). *See also United States v. One Toshiba Color Television*, 213 F.3d 147, 158 (3d Cir. 2000) (Rule 60(b) did not provide monetary remedy for void forfeiture)*; Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir. 1987) (reversing district court that re-opened judgment under Rule 60(b)(6) in order to sanction attorney and award fees under Federal Rule of Civil Procedure 11); *United States v. One Douglas A-26B Aircraft*, 662 F.2d 1372, 1377-78 (11th Cir. 1981) (holding in forfeiture case that district court had no power under Rule 60(b) to re-open judgment giving airplane to claimant in order to provide additional damages for deterioration of the plane).

**[4]** We may assume that Delay suffered an injury when the de-funding of the Commission prevented him from collecting on the judgment. We may also assume that the district court properly determined that the Delay beneficiaries filed the Rule 60(b)(6) motion within a reasonable time because they pursued other avenues of relief until 2002 prior to seeking relief under their *Lebron-Brentwood Academy* theory. We may further assume *arguendo* that the inordinate delay caused by the government's inconsistent positions amounted to extraordinary circumstances. Nonetheless, at the threshold we must confront the issue of whether Rule 60(b)(6) permits a litigant, who relies on an asserted change of law, to gain an

amended judgment on a new legal claim against a separate party that was not responsible for, or a party to, the initial judgment.

**[5]** Appellants' theory under Rule 60(b)(6) demands the re-characterization of the Commission as a federal entity to assert an entirely new takings claim against a new party, the United States. Thus appellants did not merely seek to re-open the judgment on the contract claim, in order to amend a complaint and advance a new takings claim against the United States. Rather, appellants' motion asked the district court to substitute the United States for the Commission as the party responsible for the extant judgment. The prior judgment was based on a contract claim against the Commission that was litigated. The requested amended judgment would be based, according to appellants' theory, on a constitutional taking by the United States of Delay's contract claim when the Commission was abolished and then de-funded, which takings claim has never been litigated. Appellants seek to revisit the circumstances that enabled the United States to be dismissed from the action under the controlling law of the time, re-insert the United States as the real party-in-interest under a retrospective application of *Lebron-Brentwood Academy*, and gain a judgment against the United States on a new takings claim to effect that Delay had a property interest in his cause of action against the United States that was destroyed upon termination of the Commission.

**[6]** The United States represented the Commission throughout this litigation. However, the contract claim underlying the judgment at issue is distinct from the new takings claim.[12] The

---

[12]Because the allegedly extraordinary circumstances arising from government-caused delay do not relate to the breach of contract claim underlying the judgment, appellants' reliance on the *Samish* case is unavailing. In the *Samish* case, we ordered a judgment re-opened that denied the Samish intervention in the adjudication of fishing rights under various treaties on the ground that they had not maintained an organized

fact that Delay, the prevailing party, was unable to collect on a correct judgment against a de-funded entity is unfortunate. However, we cannot void the original judgment to substitute the United States as the responsible party with liability on a new legal theory. Where courts have been without authority to re-open judgments under Rule 60(b)(6) to award fees for attorney misconduct, *see Adduono*, 824 F.2d at 620, or to permit equitable reallocation of forfeiture proceeds, *see United States v. $ 119,980*, 680 F.2d at 108, we conclude *a fortiori* that Rule 60(b)(6) cannot be used to assert a new and distinct legal claim against a defendant that was not party to the original judgment.[13]

---

tribal structure. *See United States v. Washington*, 476 F. Supp. 1101 (W.D. Wash. 1979) ("*Washington II*"), aff'd 641 F.2d 1368, 1373-74 (9th Cir. 1981). We held that the BIA improperly withheld tribal recognition during the period of *Washington II*, which constituted extraordinary circumstances meriting relief under Rule 60(b)(6) because the "Samish would almost certainly have won the right to exercise its treaty fishing rights had the tribe been federally recognized at the time . . . ." *Washington*, 394 F.3d 1156, 1159-60. The *Samish* case is distinguishable from Delay's situation because in that case the erroneous judgment was related to the extraordinary circumstances at issue: The judgment in *Washington II* inequitably operated to exclude the Samish tribe largely because the BIA failed to grant timely tribal recognition. Consequently, once the recognition issue was rectified, the district court could re-open the judgment to allow assertion of the Samish's valid treaty rights. But the amendment of the judgment in *Samish* did not alter the theory of the plaintiffs' case, it merely added the Samish tribe within the tribes entitled to fishing rights by treaty.

[13]Appellants' theory under Rule 60(b)(6) is also defective because it relies on a change in decisional law. We have previously held that "a change in the applicable law after a judgment has become final in all respects is not a sufficient basis for vacating the judgment." *Tomlin v. McDaniel*, 865 F.2d 209, 210 (9th Cir. 1989) (internal citations omitted) (denying relief based on change in decisional law under both Rule 60(b)(5) and (6)). In *Tomlin*, a plaintiff's section 1983 action was dismissed as time-barred under a one-year statute of limitations as determined by the applicable case law holding that imprisonment did not toll the statute. 865 F.2d at 209. After the judgment became final, the United States Supreme Court and the Arizona Court of Appeals each issued deci-

**[7]** Rule 60(b)(6) cannot properly be applied here because appellants ask the district court to nullify the relief granted in the original correct judgment on a breach of contract claim, and to give the Delay beneficiaries a new judgment on a takings theory against a separate defendant that was not bound by the prior judgment.

**[8]** We hold that the district court did not abuse its discretion in denying relief.

**AFFIRMED**.

---

sions that affected the limitations period for section 1983 actions such that the *Tomlin* plaintiff could have timely filed. *Id*. As to the request for relief under Rule 60(b)(6), we were unmoved: "[T]he judgment against him became final *before* the laws changed. That is the rock on which his arguments founder." *Id*. at 210 (original emphasis).