**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL WAYNE COOK,
*Petitioner-Appellant,*

v.

CHARLES L. RYAN,
*Respondent-Appellee.*

No. 12-16562

D.C. No.
2:97-cv-00146-RCB

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
Robert C. Broomfield, Senior District Judge, Presiding

Argued and Submitted
July 26, 2012—San Francisco, California

Filed July 27, 2012

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

Michael J. Meehan (argued), Law Office of Michael Meehan, Tucson, Arizona, and Dale A. Baich and Robin C. Konrad, Federal Public Defender, Capital Habeas Unit, Phoenix, Arizona (on the briefs), for petitioner-appellant Daniel Wayne Cook.

Kent E. Cattani (argued) and Thomas C. Horne (on the briefs), Office of the Attorney General, Phoenix, Arizona, for respondent-appellee Charles L. Ryan.

**OPINION**

CALLAHAN, Circuit Judge:

This is the second time Daniel Wayne Cook seeks habeas review in this court. *See Cook v. Schriro*, 538 F.3d 1000, 1007 (9th Cir. 2008). Three things have happened since we issued our decision in 2008. First, the Supreme Court issued its decision in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012). *Martinez* "changed the landscape with respect to whether ineffectiveness of postconviction counsel may establish cause for procedural default." *Lopez v. Ryan*, 678 F.3d 1131, 1133 (9th Cir. 2012). Second, the State of Arizona issued a death warrant and set August 8, 2012, as Cook's execution date. Third, the district court denied Cook's Federal Rule of Civil Procedure 60(b)(6) motion for relief from judg-

ment under *Martinez*. *Cook v. Ryan*, No. 97-cv-00146-RCB, 2012 WL 2798789 (D. Ariz. July 9, 2012) (unpublished).[1]

Cook asserts that his pretrial counsel was ineffective and that his postconviction relief ("PCR") counsel was ineffective in Cook's presentation of that claim. In Cook's view, *Martinez* requires us to excuse his procedural default because of ineffective assistance of counsel ("IAC") in his state PCR proceedings. Cook also asks us to stay his execution so that he may further pursue his underlying pretrial IAC claim.

We affirm the district court's decision to deny Cook's Rule 60(b) motion and deny Cook's motion for a stay of execution. *Martinez* does not apply to this case given Cook's decision to represent himself during his trial and at sentencing. Even if *Martinez* does apply, that decision affords Cook no relief because his pretrial IAC claim lacks merit.

A unique feature of this case, and one that informs much of our analysis, is that Cook's pretrial counsel ceased to represent Cook after seven months, at which point Cook decided to represent himself. The propriety of Cook's waiver of counsel has been fully litigated and is not at issue in this appeal. During his limited period of representation, Cook's pretrial counsel acted competently by, among other things, procuring two mental evaluations and a hearing on Cook's competence to stand trial. Indeed, in Cook's waiver of counsel hearing, Cook stated that his lawyer "has worked hard for my defense; [he] cares about the outcome of my trial."

Cook's pretrial counsel cannot be faulted for failing to develop a mitigation case based on information that Cook knew but decided not to disclose, either before or during sen-

---

[1]Cook filed a second habeas petition raising the same IAC claims that form the basis of his Rule 60(b) motion. The district court dismissed the petition as a second or successive petition barred by 28 U.S.C. § 2244(b). Cook has not appealed from that ruling, and we do not discuss it further.

tencing. Even if such fault could be assigned to Cook's pre-trial counsel, Cook cannot show prejudice because Cook affirmatively chose not to present *any* mitigation information. Moreover, the same judge who sentenced Cook in 1988 recently reviewed most of the "new" mitigation information Cook has since developed and concluded that it would not have changed his decision. Thus, even assuming *Martinez* applies to this case, Cook has not raised a "substantial" claim that his pretrial counsel was ineffective.

## BACKGROUND

### A.  Factual background

The facts are set forth in our opinion affirming the denial of Cook's first federal habeas petition, as well as in the Arizona Supreme Court's opinion denying Cook's direct appeal. *See Cook v. Schriro*, 538 F.3d 1000, 1008-09 (9th Cir. 2008); *State v. Cook*, 821 P.2d 731, 736-37 (Ariz. 1991). To summarize, at about 6 p.m. on July 19, 1987, Cook suggested to his roommate, John Eugene Matzke, that the two men steal money from Carlos Cruz-Ramos, a co-worker at a local restaurant who recently had moved in with Cook and Matzke. After Cruz-Ramos realized his money was gone, Cook and Matzke tied Cruz-Ramos to a chair and tortured him for six hours. Among other things, Cook and Matzke beat Cruz-Ramos with a metal pipe; burned his chest, stomach, and genitals with cigarettes; and cut his chest with a knife. Cook also raped Cruz-Ramos and stapled Cruz-Ramos's foreskin to a chair. Matzke finally strangled Cruz-Ramos to death with a metal pipe, and the two men put his body in a closet.

At around 2:30 or 3 a.m., Kevin Swaney arrived at Cook and Matzke's apartment. Swaney was a 16-year-old dishwasher at the restaurant where Cook and Matzke worked. Cook originally told Swaney to go away, but then invited him in. Cook barricaded the door after telling Swaney that he and Matzke had drugs they wanted to get rid of. Cook took

Swaney upstairs and showed him Cruz-Ramos's body. When they returned downstairs, Swaney was crying. Cook and Matzke forced Swaney to undress and then gagged him and tied him to a chair. Matzke told Cook he wanted no part of any torture, and went to the living room and fell asleep. At around 4:30 or 5 a.m., Cook woke Matzke. Swaney remained tied and gagged and was crying. Cook told Matzke they had to kill Swaney because he (Cook) had raped him. Cook then strangled Swaney, and the two men put his body in the closet. Cook and Matzke went to sleep.

Matzke went to work that afternoon but returned home a few hours later. He and Cook went to a bar and then hung out with Byron Watkins and other friends by the pool of their apartment complex, as well as in their apartment. The following morning, Matzke showed Watkins the bodies. Watkins convinced Matzke to go to the police. The two men went to the police department, whereupon Matzke gave a videotaped statement.

The police went to Cook and Matzke's apartment and arrested Cook. After receiving *Miranda* warnings, Cook said, "we got to partying; things got out of hand; now two people are dead." Cook then said, "my roommate killed one and I killed the other." He specifically admitted choking Swaney to death. After making these statements, Cook refused to say anything further.

## B. Procedural background

### 1. Proceedings before and during trial

The long procedural history of this matter is set forth in *Cook*, 538 F.3d at 1009-14. As relevant here, Cook and Matzke were charged with two counts of first-degree murder, including a death penalty allegation under Arizona Revised Statute § 13-703. The trial court appointed attorney Claude Keller (hereinafter "pretrial counsel") to represent Cook. A

grand jury returned an indictment on two counts of first-degree murder against both defendants.

Cook was given two pretrial psychological evaluations. After a hearing, the trial court concluded that Cook was competent to stand trial. Cook was then given an additional neurological examination, the results of which were filed with the trial court. A couple of months later, Cook filed a *pro se* motion to waive counsel and have his counsel appointed as advisory counsel. During the ensuing hearing, Cook asked that the trial court "not appoint Mr. Keller as my legal advisor." Cook explained, "Mr. Keller has worked hard for my defense; cares about the outcome of my trial. My personal belief[ ] is that he cannot advise me according to my defense." Cook asked for a specific attorney, but the trial court said only someone else was available, whom Cook rejected. The trial court explained at length the perils of self-representation, but Cook still wanted to proceed *pro se*. The court then conducted extensive questioning pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975), and found that Cook knowingly, intelligently, and voluntarily relinquished his right to counsel. The court granted Cook's motion and appointed Keller as Cook's advisory counsel. This was two weeks before trial.

Matzke entered into a stipulated guilty plea and was sentenced to 20 years in prison. Matzke testified against Cook at Cook's trial. At the end of the trial, the jury deliberated for 77 minutes before returning a guilty verdict against Cook on both first-degree murder counts.

Following his conviction, Cook continued to represent himself and presented no mitigating evidence at the sentencing hearing, stating that the "[o]nly sentence I will accept from this Court at this time is the penalty of death, your Honor. I have nothing further." The court reviewed the presentence report, the mental health evaluations, the State's sentencing memorandum, a letter from Cook, the trial evidence, and matters from hearings in the case. The court found three aggravat-

ing factors (the murders were multiple, were committed for pecuniary gain, and were committed in an especially heinous, cruel, or depraved manner). The court found no mitigating factors to offset these aggravating factors and sentenced Cook to death.

## 2. State PCR and federal habeas proceedings

Cook, with the help of a lawyer (hereinafter "appellate counsel"), filed a direct appeal in which he raised 16 issues. Cook argued, among other things, that the trial court had erred in allowing him to waive his appointed trial counsel. The Arizona Supreme Court rejected this claim, explaining that "[w]hile Cook certainly lacked a lawyer's skills, the record demonstrates that he was intellectually competent, understood the trial process, and was capable of making—and did make—rational decisions in managing his case." *Cook*, 821 P.2d at 739.

While his appeal was pending, Cook filed a motion to relieve his appellate counsel for allegedly failing to communicate with him and explain the issues to him. Cook also filed, pursuant to Arizona Rule of Criminal Procedure 32, a PCR petition asserting IAC by his pretrial counsel. Cook's appellate counsel moved to withdraw or, in the alternative, to have the Arizona Supreme Court clarify his status. The Arizona Supreme Court denied the motion to withdraw and issued an order finding Cook's PCR petition premature, appointing new counsel for PCR proceedings, and granting additional time to file an amended PCR petition, if necessary. About nine months later, the Arizona Supreme Court affirmed Cook's conviction and sentence. *Cook*, 821 P.2d at 756. The United States Supreme Court denied Cook's petition for certiorari. *Cook v. Arizona*, 506 U.S. 846 (1992).

In September 1993, Cook filed, through counsel John Williams (hereinafter "first PCR counsel"), a "Supplement to Petition for Post-Conviction Relief" in Arizona Superior

Court. The supplemental petition raised nine claims, two of which were that Cook's pretrial counsel was ineffective in failing to investigate and prepare for trial and sentencing, and that this ineffectiveness forced Cook to choose between ineffective counsel and self-representation. In May 1994, Cook's first PCR counsel moved to withdraw due to a conflict and the court appointed a new attorney, Michael Terribile (hereinafter "second PCR counsel"). In various rulings issued in late 1994 and early 1995, the trial court—which was the same court that presided over Cook's trial and sentencing—rejected some of Cook's supplemental PCR issues as precluded or not colorable and denied the others on their merits after holding evidentiary hearings to receive any newly discovered evidence.[2]

In denying Cook's pretrial IAC and "forced" self-representation claims, the court explained that Cook failed to show prejudice or deficient performance. Specifically: (1) there was "no evidence of witnesses who could have been called that would have testified in a way that was beneficial" to Cook; (2) the court could only speculate as to what might have happened at trial had Cook not represented himself or had Cook's pretrial counsel "done a better job"; (3) Cook did not show any specific deficiency, and no case required the judge to inquire into the effectiveness of appointed counsel in determining whether a waiver of counsel is knowing, intelligent, and voluntary.

Cook, through his second PCR counsel, filed a motion for rehearing regarding several of the claims asserted in his supplemental PCR petition, as well as one new claim. Cook sought rehearing of his self-representation/waiver claim, but not of his pretrial IAC claim. The court denied the motion for rehearing. Cook then filed a petition for review that simply

---

[2]During one of the evidentiary hearings, Cook's second PCR counsel elicited testimony about pretrial counsel's actions in preparing Cook's case, alleged inexperience with capital cases and applicable law, and personal problems.

stated, "Daniel Wayne Cook, through counsel and pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure, petitions the Arizona Supreme Court for review." The Arizona Supreme Court denied the petition and the United States Supreme Court denied Cook's petition for certiorari. *Cook v. Arizona*, 519 U.S. 1013 (1996).

In January 1997, Cook filed a federal habeas petition in Arizona district court. The court appointed habeas counsel and granted Cook's motion to proceed *in forma pauperis*.[3] Cook asserted 21 claims for relief, among them the claim that his decision to waive counsel was not knowing, intelligent, and voluntary, as well as the claim that his pretrial counsel was ineffective by failing to investigate mitigating evidence. The district court denied Cook's waiver claim on its merits, holding that no clearly established federal law required the state trial court to inquire into Cook's dissatisfaction with pretrial counsel's performance before allowing him to waive representation. *Cook v. Schriro*, No. 97-cv-00146-RCB, 2006 WL 842276, at *6-10 (D. Ariz. Mar. 28, 2006) (unpublished). As for Cook's independent pretrial IAC claim, the court held that this claim was procedurally barred because Cook had failed to preserve it in his motion for rehearing. Under the version of Arizona Rule of Criminal Procedure 32.9 that applied to Cook,

> [a]ny party aggrieved by a final decision of the trial court in these proceedings may, within ten days after the ruling of the court, move the court for a rehearing setting forth in detail the grounds for believing the court erred.

Ariz. R. Crim. P. 32.9(a). Moreover, "[o]n denial of a motion

---

[3]The court originally appointed an attorney from the federal public defender's office, but he was replaced by a Criminal Justice Act ("CJA") attorney. That CJA attorney continues to represent Cook, including in this appeal.

for rehearing any party aggrieved may petition the appropriate appellate court for review of the actions of the trial court." *Id.* R. 32.9(c). Thus, a petitioner could (but was not required to) seek rehearing, but doing so was a prerequisite to further review. Moreover, failure to file a *detailed* motion for rehearing waived further review.[4] *See State v. Gause*, 541 P. 2d 396, 397 (Ariz. 1975); *State v. Bortz*, 821 P. 2d 236, 239 (Ariz. Ct. App. 1991).

On appeal in 2008, we affirmed the district court's rulings. As relevant here, we concluded that "the state trial court's determination that Cook's waiver of his right to counsel was voluntary . . . was not objectively unreasonable." *Cook*, 538 F.3d at 1015. We also affirmed the district court's ruling that Cook's claim that his pretrial counsel was ineffective was procedurally barred. Specifically, we held that "preclusion for failure to preserve the issue on motion for rehearing was proper" under Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.9(c), and thus that "Cook must demonstrate cause and prejudice in order to excuse his procedural default." *Id.* at 1027 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Cook argued that he had cause because his second PCR counsel was ineffective in failing to preserve his pretrial IAC claim in the motion for rehearing and the petition for review. We rejected this argument, citing a long line of Supreme Court and Ninth Circuit cases for the proposition that IAC in post-conviction proceedings does not establish cause. *Id.* at 1027-28; *see, e.g.*, *Coleman*, 501 U.S. at 752-53; *see also Sexton v. Cozner*, 679 F.3d 1150, 1158 (9th Cir. 2012) (discussing these cases); *Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir.) (per curiam), *cert. denied*, 132 S. Ct. 1738 (2012) (same). We also

---

[4]The Arizona Supreme Court changed Rule 32.9 in June 1992 to eliminate the requirement for a detailed motion for rehearing. However, the court made that change applicable only to defendants sentenced after December 1, 1992, well after Cook's sentencing. Cook's first PCR counsel "realized that the former Rule 32.9 governed the case and filed an unopposed motion for rehearing to conform to the old rule." *Cook*, 538 F.3d at 1026-27.

cited the fact that Cook had no right to counsel at the motion
for rehearing stage. *Cook*, 538 F.3d at 1027 (citing *State v.
Smith*, 910 P.2d 1, 4 (Ariz. 1996) ("After counsel or the pro
per defendant submits the post-conviction petition to the court
and the trial court makes its required review and disposition,
counsel's obligations are at an end.")). Because Cook was
unable to show cause, we did not consider whether he suf-
fered prejudice. *Id.* at 1028 n.13. We affirmed the district
court's denial of Cook's habeas petition, and the Supreme
Court denied Cook's petition for certiorari. *Id.* at 1031; *Cook
v. Schriro*, 555 U.S. 1141 (2009).

### 3.   Additional post-trial proceedings

In January 2009, after the Supreme Court denied certiorari,
the State of Arizona sought a warrant of execution.[5] The Ari-
zona Supreme Court declined to issue a warrant because liti-
gation regarding the constitutionality of Arizona's lethal-
injection protocol was then underway. Cook filed a second
PCR petition challenging the lethal-injection protocol, but
also asserting that his pretrial counsel was ineffective in fail-
ing to investigate mitigating evidence. In December 2009, the
trial court denied Cook's second PCR petition after conclud-
ing, among other things, that Cook's pretrial IAC claim had

---

[5]In February 2009, Cook sought, and we granted, re-appointment of an
attorney from the federal defender's office to represent Cook, along with
his CJA attorney, in potential further proceedings. *See infra*. Specifically,
Cook sought re-appointment of the federal defender's office on the
grounds that his CJA attorney had "never litigated a death penalty case
through execution," and that the federal defender's office would help his
CJA attorney: (1) mount a challenge to Arizona's lethal injection protocol;
(2) assert unexhausted claims "based on changes in recent state and fed-
eral law"; (3) provide funding for a mental health expert to explore "issues
related to competency"; (4) file a second or successive habeas petition
based on new constitutional rules of law or a showing of actual innocence;
and (5) pursue any due process violations that might occur during clem-
ency proceedings. Cook did not argue that he needed the federal defend-
er's expertise or resources to conduct an investigation into mitigating
circumstances.

been previously litigated and therefore was barred. In September 2010, the Arizona Supreme Court denied Cook's petition for review, and the State once again sought a warrant of execution.

In November 2010, while the State's warrant request was pending, Cook filed a third PCR petition seeking relief on the ground that newly discovered information likely would have led the original state trial court to impose a sentence other than death. *See* Ariz. R. Crim. P. 32.1(e), (h) (allowing PCR relief on grounds of newly discovered evidence). Specifically, based on an investigation conducted by his federal defender, Cook presented the declarations of Cook's mother, sister, and a former group home parent, all of whom knew Cook as a child or adolescent. These declarations documented a long history of physical and sexual abuse by family members, sexual abuse by the group home parent, a gang rape by Cook's peers in the group home when Cook was fifteen years old, and Cook's own drug and alcohol abuse. Several of the declarants indicated that no one had contacted them previously.[6]

In addition, Cook presented the declaration of a psychiatrist who reviewed information from Cook's trial and the declarations and records described above. The psychiatrist opined that, at the time Cook committed the murders, Cook suffered from post-traumatic stress disorder ("PTSD"), "organic mental syndrome, not otherwise specified," and alcohol and amphetamine intoxication. A letter and a declaration from a clinical psychologist highlighted what the psychologist believed were deficiencies in Cook's pretrial competency evaluations.

Finally, Cook presented the declaration of Eric Larsen, the lead prosecutor at Cook's trial in 1988. Larsen declared that Cook's pretrial counsel was at the "low end of the compe-

---

[6]As part of his Rule 60(b)(6) motion, Cook submitted additional declarations containing similar statements.

tency scale" and "did not speak with me about mitigating circumstances." Larsen also declared that: he reviewed the declarations of Cook's relatives; "[e]vidence of [Cook's] brain damage and post-traumatic stress disorder was present at the time that Mr. Cook was arrested and tried for murder"; and "[h]ad I been informed of this mitigating information regarding Mr. Cook's severely abusive and traumatic childhood and his mental illnesses, I would not have sought the death penalty in this case."[7]

In January 2011, the trial court denied Cook's third PCR petition. *State v. Cook*, No. CR-9358 (Maricopa Co. Sup. Ct. Jan. 27, 2011).[8] The judge—who again was the same judge who presided over Cook's trial and sentencing—considered Cook's additional information and explained that it either reflected information the court already knew in 1988 or was irrelevant post-hoc speculation. Thus, the judge still would have imposed the death penalty. The judge also concluded that Cook had not been diligent in securing his PTSD diagnosis.

The Arizona Supreme Court then issued a warrant of execution for April 5, 2011. Cook filed a petition for review to that court of the trial court's denial of his third PCR petition. Among other things, he argued that his lack of diligence in

---

[7]Cook asserted in his Rule 60(b)(6) motion that all of this newly discovered mitigation information

> could not have been presented in Cook's 1997 petition for habeas corpus, because it was not until the Federal Public Defender for the District of Arizona was appointed co-counsel for Cook in 2009, with its financial and personnel resources to carry out the necessary investigative and professional investigations and evaluations, that a proper mitigation investigation could be accomplished. It was in the process of preparing for clemency . . . that facts were uncovered to support an application such as is made here.

[8]We take judicial notice of this decision. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state judicial opinion).

developing the PTSD diagnosis was the result of his first PCR counsel's ineffectiveness. The Arizona Supreme Court summarily denied review. Cook filed a petition for certiorari to the United States Supreme Court and sought a stay of execution pending the Court's resolution of the petition in *Martinez*. The Court granted a stay pending the resolution of Cook's certiorari petition. *Cook v. Arizona*, 131 S. Ct. 1847 (2011).

### 4. *Martinez*

In March 2012, the Supreme Court decided *Martinez*. The Court established an equitable, rather than constitutional, "narrow exception" to the rule previously announced in *Coleman*:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320. Thus, under *Martinez*, a petitioner may establish cause for procedural default of a trial IAC claim, where the state (like Arizona) required the petitioner to raise that claim in collateral proceedings, by demonstrating two things: (1) "counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Immediately after deciding *Martinez*, the Supreme Court denied Cook's certiorari petition, *Cook v. Arizona*, 132 S. Ct.

1790 (2012), and the State sought a new warrant of execution. Cook filed a motion before the Supreme Court for leave to file an untimely petition for rehearing from the Court's 2009 denial of his petition for certiorari in the federal habeas proceedings, urging a remand to allow the Ninth Circuit to apply *Martinez* to Cook's pretrial and PCR IAC claims. On May 29, 2012, the Court denied Cook's motion. *Cook v. Schriro*, 132 S. Ct. 2709 (2012).

## 5. Current proceedings

On June 5, 2012, Cook filed in Arizona district court the Rule 60(b) motion that underlies this appeal. On June 12, 2012, the Arizona Supreme Court issued a warrant of execution for August 8, 2012. Cook filed a motion for stay of execution pending the district court's disposition of his Rule 60(b)(6) motion.

On July 9, 2012, the district court denied Cook's motions. Applying the six-factor test from *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009); *see also Lopez*, 678 F.3d at 1135-37, the court concluded that *Martinez* does not constitute an "extraordinary circumstance" justifying relief under Rule 60(b). Although certain factors favored granting relief, others —namely finality, comity, and the degree of connection between Cook's claims and *Martinez*—did not. Furthermore, the court held, Cook failed to show that his underlying pretrial IAC claim was substantial, and therefore he could not establish cause under *Martinez* for his procedural default.

Cook timely appeals the district court's order denying his Rule 60(b)(6) motion. Cook also seeks a stay of his execution from this court.

## DISCUSSION

### A.   Cook's Rule 60(b)(6) motion is not a second or successive petition under 28 U.S.C. § 2244(b).

**[1]**  A Rule 60(b)(6) motion constitutes a second or successive habeas petition under 28 U.S.C. § 2244(b) when it "seeks to add a new ground" for relief or "it attacks the federal court's previous resolution of a claim *on the merits* . . . ." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) (emphasis in original). "On the merits" means "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." *Id.* at 532 n.4. A habeas petitioner does not seek merits review "when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.*

**[2]**  We agree with the district court that Cook's Rule 60(b)(6) motion is not a barred second or successive habeas petition. In his motion, Cook seeks relief not from the district court's ruling on the merits of his claim that his waiver of counsel was not knowing, intelligent, and voluntary because his pretrial counsel was ineffective, but from the district court's ruling that his separate claim that his counsel was ineffective for failing to investigate and prepare a mitigation plan was procedurally barred.[9] The district court correctly interpreted the statement in *Cook*—that "the trial court's rulings on Cook's ineffective assistance of counsel claims were not contrary to or unreasonable applications of *Strickland*," *Cook*, 538 F.3d at 1016—as being limited to the waiver issue. Section 2244(b) therefore did not bar the district court from considering Cook's Rule 60(b)(6) motion.

---

[9]Although the two claims are interrelated, as we discuss *infra*, they are sufficiently separate to evade § 2244(b)'s bar.

**B.   Cook is not entitled to relief under Rule 60(b)(6).**

We review the district court's denial of a Rule 60(b) motion for abuse of discretion. *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007). " 'However, as the Supreme Court held in *Gonzalez*, 545 U.S. at 536-38, appellate courts may, in their discretion, decide the merits of a Rule 60(b) motion in the first instance on appeal.' " *Lopez*, 678 F.3d at 1135 (quoting *Phelps*, 569 F.3d at 1134-35). Whether we conduct our review independently or through the lens of the district court's discretion, Cook's claim to Rule 60(b)(6) relief fails. Even if Cook otherwise could "show 'extraordinary circumstances' justifying the reopening of a final judgment," *Gonzalez*, 545 U.S. at 535 (citations omitted), the ground for his motion *Martinez*—affords him no relief.

### 1.   *Martinez* does not apply to Cook's claims.

**[3]** In *Faretta v. California*, 422 U.S. 806, 835 (1975), the Supreme Court explained that, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." The Court also explained that, "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " *Id.* at 834 n.46.

**[4]** In this case, Cook was represented by pretrial counsel from August 1987 through April 1988. Cook then made a knowing, intelligent, and voluntary waiver of his right to counsel,[10] and represented himself at his trial and sentencing hearing. Even if Cook's pretrial counsel performed deficiently

---

[10]As discussed *supra*, we previously rejected Cook's claim that his waiver was not voluntary. *See Cook*, 538 F.3d at 1015.

during the seven months he represented Cook (a contention we reject below), Cook could have corrected those errors once he decided to represent himself.[11] *Faretta* therefore precludes Cook from complaining about the "quality of his own defense." It follows that the reason given by the Supreme Court for creating an exception to the *Coleman* rule in *Martinez*—"[t]o protect prisoners with a potentially legitimate claim of ineffective assistance of trial *counsel*"—does not apply to Cook. *Martinez*, 132 S. Ct. at 1315 (emphasis added).[12]

**[5]** In short, Cook's trial counsel was, at his own request, Cook. Accordingly, he cannot claim he was denied effective assistance of counsel. Nor can Cook be prejudiced by PCR counsel's alleged failures to assert IAC by trial counsel where, again, Cook chose to forego trial counsel. Nonetheless,

---

[11]This is particularly true because Cook already knew much, if not all, of the information he now faults his counsel for failing to develop. Indeed, Cook admits that much of his "new" mitigation information was "available" before and during his trial in 1988. Cook *has* to admit this: even if he was not completely aware of the mental impairments he now alleges he had at the time he committed the murders, he plainly was aware of his own troubled childhood and adolescence. Yet Cook apparently never told his pretrial or PCR counsel about that mitigation information, never presented the information during the penalty phase of his trial (instead saying that he would accept only the death penalty, and that he had "nothing further"), and never presented the information in his federal habeas proceedings, even though he has been represented by the same counsel since his habeas proceedings commenced in 1997.

Cook points to the district court's decision to deny his request for funding in 2000. However, while Cook said he needed funds for a "documents investigator/mitigation specialist" and a mental health examination, his pretrial IAC claim was not among the claims for which he said he needed those things. Cook also suggests that it was not until he had the additional resources of the federal defender's office in 2009 "that a proper mitigation investigation could be accomplished." But Cook did not seek that assistance to develop a mitigation case. *See supra*. Finally, even if these explanations had merit, they fail to explain Cook's inaction before 2000.

[12]We do not hold that a *Martinez* claim can never be available to a defendant who represents himself. Here, however, the conduct of the trial and sentencing phases, and Cook's strategy, were his own.

even if *Martinez* applied to Cook notwithstanding *Faretta*, he is not entitled to relief because his pretrial IAC claim is not substantial.

### 2. Cook's underlying pretrial IAC claim is not substantial.

**[6]** To succeed under *Martinez*, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. "Thus, *Martinez* requires that a petitioner's claim of cause for a procedural default be rooted in 'a potentially legitimate claim of ineffective assistance of trial counsel.' " *Lopez*, 678 F.3d at 1137-38 (quoting *Martinez*, 132 S. Ct. at 1315); *see also Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support . . . .").

As an initial matter, Cook argues that the district court applied too exacting a standard to his pretrial IAC claim. In Cook's view, the court evaluated whether Cook would *succeed* on his IAC claim, rather than whether his claim was "substantial," i.e., "has some merit."[13] *Martinez*, 132 S. Ct. at 1318. We disagree. Here, while the district court explained

---

[13]In explaining that an underlying trial IAC claim must have "some merit," *Martinez* referenced, not as direct but as generally analogous support, *Miller-El v. Cockrell*, 537 U.S. 322 (2003), which sets forth the standards for issuing certificates of appealability under 28 U.S.C. § 2253. Under *Miller-El*, a certificate of appealability should issue where the "resolution [of a habeas petitioner's claim] [is] debatable amongst jurists of reason." *Id.* at 336. A court should conduct a "general assessment of the[ ] merits," but should not decline to issue a certificate "merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 336-37.

that Cook "cannot establish" deficient performance or preju-
dice, the court was clear that it was applying the "*Martinez*
test of substantiality." *Lopez*, 678 F.3d at 1138.

**[7]** Cook's pretrial IAC claim—that his pretrial counsel
was ineffective in failing to investigate and to prepare a miti-
gation case for sentencing—does not meet *Martinez*'s test. An
IAC claim has merit where counsel's "performance was
unreasonable under prevailing professional standards," and
(2) "there is a reasonable probability that but for counsel's
unprofessional errors, the result would have been different."
*Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001) (citing
*Strickland*, 466 U.S. at 687-91, 694).

First, Cook cannot show that his pretrial counsel performed
deficiently. Cook's lawyer represented Cook for just seven
months. During that time, the lawyer obtained two mental
health evaluations, hired an investigator who interviewed sev-
eral witnesses, filed a host of motions, and caused the trial
court to hold a competency hearing. In particular, Cook's two
mental health evaluations provided detailed information about
Cook's background, mental state at the time of the murders,
and competency to stand trial. The first evaluation, conducted
by Dr. Daniel Wynkoop, a psychologist, described Cook's
unstable home life, juvenile delinquency, continuing drug and
alcohol use, sexual abuse, emotional instability, and repeated
hospitalizations for depression. The second evaluation, con-
ducted by Dr. Eugene Almer, a psychiatrist, recapped much
of the first evaluation but also detailed the unstable life of
Cook's parents and siblings, Cook's medical history, and
other topics. Dr. Almer reviewed Dr. Wynkoop's evaluation,
"extensive" medical records, and a taped interview of Cook's
mother and stepfather that was conducted after the murders.
Although both doctors explained that Cook likely had been
using drugs and alcohol when he committed the murders, they
also explained that he did not have significant cognitive defi-
cits or organic brain problems. Finally, both doctors con-
cluded that Cook was competent to assist his pretrial counsel

in his defense, with Dr. Wynkoop adding that Cook "could provide considerable data if he so chose."

[8] As the district court explained, it is apparent from these evaluations that Cook's pretrial counsel obtained extensive records and background information about his client during the limited period during which he represented Cook. It is also apparent that the state trial court, which reviewed these evaluations, the presentence report, the State's sentencing memorandum, a letter from Cook, the trial evidence, and the testimony from evidentiary hearings, was aware of that information when it imposed the death penalty. Given these facts, we cannot say that Cook's pretrial counsel performed deficiently.[14]

Our conclusion is bolstered by the unique procedural his-

---

[14]Thus, this is not a case where a lawyer knew his client had or might have mitigating circumstances but did nothing to investigate them. *Cf. James v. Ryan*, 679 F.3d 780, 807-10 (9th Cir. 2012), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. June 28, 2012) (No. 12-11) (finding deficient performance where counsel "failed to conduct even the most basic investigation of James's social history" despite "obvious indications" of a troubled childhood and mental health problems).

Nor is this a case in which counsel discovered initial mitigating information and then did nothing further despite continuing to represent his client through sentencing. *Cf. Wiggins v. Smith*, 539 U.S. 510, 523-28 (2003) (holding that counsel performed deficiently where they considered only basic social history documents, conducted no further investigation after learning of possible leads, and presented no mitigating information at the sentencing hearing); *Williams v. Taylor*, 529 U.S. 362, 370, 396 (2000) (counsel performed deficiently where he failed to, among other things, present known mitigating information during sentencing); *James*, 679 F.3d at 807-10 (finding deficient performance where counsel learned of substantial mitigating information following guilty verdict but failed to present it during the sentencing hearing).

As discussed above, Cook's pretrial counsel took actions that were reasonable "under prevailing professional norms," *Strickland*, 466 U.S. at 688, especially in light of the short period during which Cook allowed his counsel to represent him.

tory of this case, and in particular Cook's own role in it. First, Cook's pretrial counsel represented him for at most seven months, before Cook successfully moved to represent himself. In doing so, Cook accepted responsibility for preparing for his trial and sentencing hearing. Second, the information Cook's pretrial counsel allegedly failed to discover or to develop during this short period was peculiarly within Cook's knowledge, but he withheld that information from his counsel and the court. Indeed, Dr. Wynkoop noted that Cook could provide considerable data if he chose to. Instead, Cook declined to provide any information, going so far as to say at sentencing that the "[o]nly sentence I will accept from this Court at this time is the penalty of death, your Honor. I have nothing further."[15]

Even if Cook's pretrial counsel could be faulted for not developing information that Cook withheld, Cook cannot show that he suffered any prejudice as a result of that alleged error. First, whether Cook's pretrial counsel had developed further mitigation information would have made no difference given that Cook already knew the information but affirmatively chose not to present it. *See Schriro v. Landrigan*, 550 U.S. 465, 477 (2007) ("The District Court was entitled to conclude that regardless of what information counsel might have uncovered in his investigation, Landrigan would have interrupted and refused to allow his counsel to present any such evidence.").

---

[15]Even though Cook never told his counsel about his own background, Cook argues that the need for a more "thorough" investigation nonetheless was made apparent by his pretrial motion for a competency hearing, in which he revealed that he had been a patient at two mental hospitals and received treatment at a mental health clinic, and that a car had run over his head. However, that information was more fully developed during, and as a result of, the dual competency evaluations. As for the alleged car accident, Dr. Almer discussed it in his report, even though the neurology expert who examined Cook's hospital records found no record of a head injury. When confronted with this fact, Cook claimed his records had been "transferred." The expert also conducted a neurological exam of Cook and concluded that it was "[c]ompletely normal."

Second, the same trial judge who sentenced Cook to death in 1988 has stated that Cook's additional information would not have made any difference. *See id.* at 476 ("And it is worth noting, again, that the judge presiding on postconviction review was ideally situated to make this assessment because she is the same judge who sentenced Landrigan and discussed these issues with him."). In ruling on Cook's third PCR petition, the judge considered much of Cook's "new" mitigation information, particularly his PTSD diagnosis. The judge explained that Cook's "subsequent diagnosis of post-traumatic stress disorder simply gave a name to significant mental health issues that were already known to the Court at the time of sentencing." Thus, the judge, writing as the court, determined "unequivocally that if it had known in 1988 that the Defendant had been diagnosed with post-traumatic stress disorder at the time of the murders it still would have imposed the death penalty."

The trial judge also explained that the declaration of Eric Larsen, the prosecutor-turned-criminal-defense-attorney who said he would not have sought the death penalty had he known about Cook's mitigating circumstances, represented "the ultimate in speculation." Given the prosecutor's background and practices in 1987 and 1988, as well as the "fairly regular basis" on which the prosecutor's office sought the death penalty during that period, it was "unfathomable" that the death penalty would not have been sought in a case "involving the torture, mutilation, and eventual killing of 2 completely innocent victims." That was true "even for a defendant who was known to have been diagnosed" with PTSD. We think these observations, made by the same judge who sentenced Cook nearly 25 years ago, are persuasive.

**[9]** In sum, Cook fails to set forth a substantial claim that his pretrial counsel performed deficiently or that, even if he did, Cook suffered prejudice. This conclusion supports the district court's denial of Rule 60(b)(6) relief.

### C.   Cook has not established that he is entitled to a stay of execution.

**[10]** "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill v. McDonald*, 547 U.S. 573, 584 (2006). As discussed *supra*, we reject Cook's *Martinez* claim on the grounds that *Martinez* does not apply, and that, even if it does, Cook's pretrial IAC claim is not substantial. Because Cook therefore fails to show "a significant possibility of success on the merits," we must deny his request for a stay.

We also conclude that Cook fails to meet two of the three remaining requirements for a stay: "that the balance of equities tips in his favor[ ] and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As discussed *supra*, Cook has delayed for 25 years disclosing much of the information on which he now premises his pretrial IAC claim. *Cf. Hill*, 547 U.S. at 584 (explaining that where a prisoner has delayed bringing his claim, the equities cut sharply against him); *Gomez v. U.S. Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay). In addition, the citizens of the State of Arizona—especially the families of Carlos Cruz-Ramos and Kevin Swaney—have a compelling interest in seeing that Arizona's lawful judgments against Cook are enforced.

### CONCLUSION

The district court properly denied Cook's Rule 60(b)(6) motion for relief from judgment. *Martinez* does not apply to Cook given Cook's decision to represent himself. Even if *Martinez* does apply, Cook has not established that his pretrial

counsel IAC claim is substantial. Cook also fails to meet the requirements for a stay of execution. The district court's judgment is **AFFIRMED**, and Cook's motion for a stay of execution is **DENIED**.